

CHIESA SHAHINIAN & GIANTOMASI PC

11 Times Square, 34th Floor, New York, NY 10036
csglaw.com

A. ROSS PEARLSON
Member

rpearlson@csglaw.com

O  973.530.2100        F  973.325.1501

September 27, 2023

**BY ECF**
Hon. Lorna G. Schofield, U.S.D.J.
United States District Court, Southern District of New York
500 Pearl Street
New York, New York 10007

   Re: *Sport-BLX, Inc. v. Salerno, et al.*, Civil Action No. 22-cv-08111 (LGS)

Dear Judge Schofield,

  This firm represents Defendants Michael M. Salerno ("Mr. Salerno") and Cypress Holdings, III, LP ("Cypress") (collectively, the "Cypress Parties") in the above-referenced action. Pursuant to Local Rule 37.2 and in accordance with Rules III.A.1 and III.C.3 of Your Honor's Individual Rules, the Cypress Parties respectfully submit this pre-motion letter for leave to file a motion for summary judgment on all counts of Sport-BLX, Inc.'s ("Sport-BLX") Amended Complaint (ECF 40).

  **I.** **Count One – Violation of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 (17 C.F.R. § 240.10b-5)**

  Sport-BLX's securities fraud claims are barred by the applicable two-year statute of limitations, namely "not later than the earlier of: (1) two years after the discovery of the facts constituting the violation; or (2) five years after such violation." 28 U.S.C. § 1658(b)(2). Sport-BLX's initial Complaint was filed on August 3, 2022 in the Supreme Court of New York (ECF 3, ¶ 3) and subsequently removed to federal court (ECF 6). Sport-BLX's initial Complaint did not contain a count for securities fraud violations. On March 1, 2023, Sport-BLX filed an Amended Complaint, asserting 10b-5 violations. Sport-BLX's 10b-5 claims are untimely because they are based on conduct discovered in 2019, outside the two-year statute of limitations. Sport-BLX alleges that Mr. Salerno made the following materially false and misleading statements in February and August of 2019: (1) Mr. Salerno's February 2019 statement that Cypress was his "holding company"; (2) Mr. Salerno's February 2019 edits to the Side Letter Agreement that defined Cypress as "Salerno" and (3) Mr. Salerno's August 2019 statement that his refusal to disclose Cypress' ownership was based on concerns about his estate plan. (ECF 40, ¶ 91).

  As of February 28, 2019, the date the Side Letter Agreement was signed, Sport-BLX was aware that Cypress was a limited partnership which, by definition, requires additional limited partners. 26 CFR § 301.7701-2(a). Sport-BLX (which consisted of sophisticated businessmen) therefore knew, or should have known (had they conducted any due diligence), as of that date that Cypress consisted of investors other than Mr. Salerno. At the very latest, by its own admission Sport-BLX was aware of that fact no later than August of 2019, when Sport-BLX began the application

process with FINRA and first asked Mr. Salerno about Cypress' beneficial owners. Sport-BLX's 10b-5 claims based on the February 2019 statements fall outside of the statute of limitations and should be dismissed. Moreover, Mr. Salerno's August 2019 statement regarding his concerns about disclosing the beneficial ownership structure of Cypress was not false when made and lacks any connection to the purchase and/or sale of a security. The August 2019 comment was made months after Cypress' March 2019 investment in Sport-BLX, and therefore Sport-BLX cannot claim to have relied upon this statement in connection with the purchase or sale of a security. For these reasons, Count One of Sport-BLX's Amended Complaint must be dismissed.

### II.     Count Two – Fraud

Sport-BLX's fraud claim is premised on the same three statements referenced above with respect to its 10b-5 claims as evidence of Mr. Salerno's alleged fraud against Sport-BLX. However, Sport-BLX cannot establish the essential elements of materiality, intent to defraud, causation or damages to assert a fraud claim. *See, e.g., In re Amla Litig.*, 282 F. Supp. 3d 751 (S.D.N.Y. 2017) (identifying requisite elements of fraud). To begin, Sport-BLX has no evidence showing that any of the statements were material. Sport-BLX chose not to distribute investor questionnaires or otherwise perform due diligence prior to accepting Cypress' investment. Even after "discovering" that Cypress was a limited partnership, Sport-BLX chose to accept its payment in March and move forward without further inquiry.

Additionally, Sport-BLX will be unable to show the requisite intent to defraud. In an email sent to Messrs. De Perio and Hall on February 28, 2019, Mr. Salerno stated that, "I saw my attorney didn't update agreements with my holding company name…I will do that and send over signed docs." If Mr. Salerno intended to defraud Sport-BLX he would not have alerted Mr. Hall nor Mr. De Perio to this revision. In addition, the Side Letter Agreement between Cypress, Sport-BLX, Mr. Hall and Mr. De Perio clearly lists Cypress as a "Delaware limited partnership" with Mr. Salerno noted as the "Manager." By definition, a limited partnership is an entity consisting of 2 or more persons and having 1 or more general partners and 1 or more limited partners. 26 CFR § 301.7701-2(a). Yet no one from Sport-BLX ever asked Mr. Salerno about the identity of the Cypress partners until the fall of 2019 in connection with the FINRA application. Sport-BLX had every opportunity to perform due diligence into the identity of Cypress' partners, prior to the investment—but chose not to. There is no evidence of any intent to defraud.

### III.    Count Three – Breach of Fiduciary Duty

To state a claim for a breach of fiduciary duties, a plaintiff must establish: (1) a fiduciary duty existing between the parties; (2) the defendant's breach of that duty; and (3) damages suffered by the plaintiff which were proximately caused by the breach. *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162 (S.D.N.Y. 2011). As a matter of law, a shareholder owes a fiduciary duty to a corporation only if the shareholder: (a) owns a majority interest in or (b) exercises control over the business affairs of the corporation. *Gradient OC Master, Ltd. v. NBC Universal, Inc.*, 930 A.2d 104 (Del. Ch. 2007). It is undisputed that Cypress did not own a majority interest of shares in Sport-BLX and therefore could not exercise control over the corporation's affairs. As a result, Cypress owed no fiduciary duty to Sport-BLX and therefore the breach of fiduciary duty claim against Cypress must be dismissed as a matter of law. (*See* ECF 40 ¶¶ 108, 109, 110).

Sport-BLX alleges that Mr. Salerno breached his fiduciary duty to Sport-BLX in his capacity as a director, by refusing to disclose Cypress' beneficial owners and by failing to exercise informed

judgment. (ECF 40 ¶¶ 106, 107). This claim must fail because Sport-BLX will be unable to establish a breach of duty, causation, and damages. Mr. Salerno had no duty as a director to disclose the investors of Cypress. Even if he did, Sport-BLX has no evidence that Mr. Salerno's failure to disclose Cypress's beneficial owners caused Sport-BLX's FINRA application to be denied, especially given Mr. Salerno's agreement to disclose the information directly to FINRA or later directly to Sport-BLX and Mr. Hall. Additionally, Board Meetings from the early fall reflect that it was the Founders' decision to convert Sport-BLX solely to a technology company, and for that reason, the FINRA application was never filed.

### IV.     Count Four – Tortious Interference with Prospective Economic Advantage

As to its claim for tortious interference, Sport-BLX points to Mr. Salerno's "refus[al] to provide ownership information in response to Sport-BLX's FINRA application" as the purported interference with Sport-BLX's ability to enter into unspecified contracts. (ECF 40 ¶ 115). Sport-BLX's claim for tortious interference fails for two reasons. First, Sport-BLX has put forth absolutely no evidence establishing it had any protectable business expectations, a required element of the claim. In discovery, Sport-BLX failed to identify any specific business relationships with any athletes or firms with which Mr. Salerno or Cypress wrongfully interfered. Second, Sport-BLX cannot identify any wrongful purpose, or dishonest, unfair, or improper means used by Cypress or Mr. Salerno. As referenced above, Mr. Salerno offered to disclose Cypress' beneficial owners to FINRA and/or Sport-BLX in December. (SPORTBLX00052396). In that e-mail, Mr. Salerno noted his concern was maintaining the confidentiality of that information as it involved his "estate plan structure." Accordingly, Sport-BLX's tortious interference claim must be dismissed. *See Dardashtian v. Gitman*, No. 17 CIV. 4327 (LLS), 2017 WL 6398718, at *8 (S.D.N.Y. Nov. 28, 2017) (identifying requisite elements of tortious interference claim, including interference with business relations and action undertaken for an improper purpose or with dishonest means).

### V.     **Sport-BLX can point to no cognizable damages against Mr. Salerno or Cypress**

To withstand summary judgment, Sport-BLX must show that the alleged actions of Mr. Salerno and Cypress caused Sport-BLX to sustain cognizable damages. However, there are no probable damages or diminution in value here to support Sport-BLX's claims. In fact, the evidence suggests otherwise: on December 12, 2019, Mr. Hall and Mr. De Perio entered into an agreement with Glassbridge (a public company with a disinterested Board) to sell their personal Sport-BLX shares at a price of $355 per share. The transaction price was the highest price per share of any purchase of Sport-BLX stock and took place just three days after Mr. Hall advised the Board that the shares were supposedly only worth $50-60 per share. Despite transactions and valuations that support the $50 million value on which the share price was based, Sport-BLX's damages expert used Hall's off-the-cuff statement of $50 per share as the sole support for his damages and alleged diminution of value. Sport-BLX's inability to demonstrate any quantifiable damages is also fatal to its claims.[1]

---

[1] The $50 million valuation underlying the $355 share price in the GlassBridge transaction was supported by a valuation performed by its consultant and described in its Form 10-K filing months later. Similarly, the consultant for another third-party, Orix PTP Holdings also valued Sport-BLX at $50 million in the same timeframe. Yet Sport-BLX's expert ignored these indications of value and chose to instead base his damages claims as to a purported diminution of the company's stock on Hall's unsupported statement. Upon the completion of discovery, Cypress intends to move to strike Sport-BLX's baseless and unsupported damages analysis pursuant to FRE 703 and *Daubert v. Merrell-Dow Pharmaceuticals, Inc*., 509 U.S. 579 (1993).

We thank the Court for its consideration of this matter.

> Respectfully submitted,
>
> */s/ A. Ross Pearlson*
> A. Ross Pearlson

cc:   All counsel of record (via ECF and email)