UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------X
                                                  :
CYPRESS HOLDINGS, III, L.P.,                      :
individually and derivatively on                  :
behalf of Sport-BLX, Inc.,                         :
                                                  :
                              Plaintiff,          :          22 Civ. 1243 (LGS)
                                                  :
              -against-                            :
                                                  :
SPORT-BLX, INC., et al.,                          :
                              Defendants,          :
                                                  :
------------------------------------------------------------X     OPINION & ORDER
                                                  :
SPORT-BLX, INC.,                                  :
                              Plaintiff,          :
                                                  :
              -against-                            :
                                                  :          22 Civ. 8111 (LGS)
CYPRESS HOLDINGS, III, L.P, and                   :
MICHAEL M. SALERNO,                               :
                              Defendants.          :
                                                  :
------------------------------------------------------------X
```

LORNA G. SCHOFIELD, District Judge:

The instant motions arise in two related cases.  In *Cypress Holdings, III, L.P. v. Sport-BLX, Inc.*, 22 Civ. 1243, Cypress Holdings, III, L.P. ("Cypress") asserts claims against Defendants Sport-BLX, Inc. ("Sport-BLX"), GlassBridge Enterprises, Inc. ("GlassBridge"), Clinton Group, Inc. ("Clinton Group"), Sport-BLX Securities, Inc. ("S-BLX Securities"), George Hall, Joseph De Perio, Daniel Strauss, Francis Ruchalski, Cesar Baez and Christopher Johnson (collectively, the "Sport-BLX parties"), alleging numerous direct and derivative federal securities and state law claims.  In the related case, *Sport-BLX, Inc. v. Salerno*, 22 Civ. 8111,

Sport-BLX sued Cypress and Michael M. Salerno (collectively, the "Cypress parties"), also asserting federal securities and state law claims.

The parties move for summary judgment.  In 22 Civ. 1243, the Sport-BLX parties as Defendants seek summary judgment on each claim asserted by Cypress against them.  In 22 Civ. 8111, the parties cross-move for summary judgment on each claim asserted by Sport-BLX.  For the reasons stated below, the motions are granted in part and denied in part.

## I.    BACKGROUND

### A.    Factual Background

Familiarity with the underlying facts and procedural history is assumed.  *See generally Cypress Holdings, III, L.P., v. Sport-BLX, Inc.*, No. 22 Civ. 1243, 2024 WL 4265645 (S.D.N.Y. Sept. 23, 2024) (granting in part and denying in part Sport-BLX's motion to dismiss).  The brief summary below is taken from the parties' submissions.

Sport-BLX is a company founded by Hall and De Perio to create a market for investing in sports-related assets, a business model that included seeking broker-dealer registration for Sport-BLX.  Cypress is an investment entity managed by Salerno.  On February 28, 2019, Cypress purchased 7,760 shares of Sport-BLX common stock for a total investment of approximately $1 million.  The same day, Cypress, Sport-BLX, Hall and De Perio executed a Side Agreement.  The Side Agreement included anti-dilution protections for Cypress and provided that, so long as Cypress held at least 2.5% of Sport-BLX's stock, Hall and De Perio would vote the shares they owned or controlled to elect a Cypress representative to the Sport-BLX Board.    Pursuant to the Side Agreement, Salerno was designated as the Cypress representative and was elected to the Sport-BLX Board, on which he served until December 23, 2019.

Other key entities include GlassBridge, an investment entity that acquired a significant stake in Sport-BLX; Clinton Group, an entity affiliated with Sport-BLX's founders that provided office space to Sport-BLX and received fees from various transactions; and S-BLX Securities, an affiliate that purchased Sport-BLX's proprietary trading platform. Individual Defendants Johnson, Baez, Strauss and Ruchalski served as Sport-BLX directors at various times.

In support of its claims, Sport-BLX relies on evidence that, in connection with the February 2019 investment, Salerno represented "Cypress" as "[his] holding company," and that he treated "Cypress" and "Salerno" as interchangeable, implying sole ownership. In fact, Cypress had multiple limited partners (including one with a felony conviction). In mid-2019, as part of Sport-BLX's broker-dealer license application, the Financial Industry Regulatory Authority ("FINRA") requested that Sport-BLX identify its beneficial owners to the level of natural persons. Salerno declined to disclose Cypress's beneficial-owner information to Sport-BLX, citing estate-planning concerns and stating other directors did not "have a right to this information at this time." At the November 2019 board meeting, Sport-BLX's outside FINRA counsel advised the Board that failure to provide the beneficial-ownership information would be fatal to the broker-dealer application and that Sport-BLX itself needed to know who its shareholders were for the application to succeed. By December 2019, Sport-BLX had withdrawn its FINRA broker-dealer application and changed its business plan.

For its claims, Cypress contends that Sport-BLX made misrepresentations and false promises to induce its investment, including assurances about the use of investment proceeds, and the board seat promised to Cypress. Cypress alleges that GlassBridge worked with Hall and De Perio to orchestrate the loss of the board seat, resulting in Salerno's removal from the board in December 2019. Cypress also points to transactions in which Clinton Group received

"success fees" tied to GlassBridge deals and alleges that Sport-BLX sold its proprietary trading platform -- which Cypress claims cost over $2 million to develop -- to S-BLX Securities for well below fair-market value.

### B.    Procedural History

Cypress filed 22 Civ. 1243 in the Supreme Court of the State of New York on January 11, 2022.  The Sport-BLX parties removed the action on February 14, 2022, asserting federal question jurisdiction.  The operative complaint is the Second Amended Complaint ("SAC") filed on January 30, 2023.

Sport-BLX filed 22 Civ. 8111 in the New York Supreme Court on August 3, 2022, naming Cypress and Salerno as defendants.  The Cypress parties removed the case on September 22, 2022, asserting diversity jurisdiction. The operative complaint is the Amended Complaint filed March 1, 2023.  The Cypress parties answered, and Salerno asserted a counterclaim for indemnification against Sport-BLX.  The counterclaim is not at issue in the pending motions.

The two actions were coordinated for the purposes of discovery.  On September 23, 2024, the Sport-BLX parties' Rule 23.1 motion to dismiss the derivative claims in 22 Civ. 1243 was granted in part and denied in part.  *Cypress Holdings,* 2024 WL 4265645 at *1.  The parties filed the instant motions for summary judgment.

## II.    STANDARD

In evaluating a motion for summary judgment, a court must "construe the record evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor."  *Torcivia v. Suffolk Cnty.*, 17 F.4th 342, 354 (2d Cir. 2021).  When parties cross-move for summary judgment, courts analyze the motions separately, "in each case construing the evidence in the light most favorable to the non-moving party."  *Wandering Dago, Inc. v. Destito*,

879 F.3d 20, 30 (2d Cir. 2018).  Summary judgment is appropriate where "there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a).  "An issue of fact is genuine if the evidence is such that a reasonable jury could

return a verdict for the nonmoving party."[1]  *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242

(2d Cir. 2020).  "Only disputes over facts that might affect the outcome of the suit under the

governing law will properly preclude the entry of summary judgment."  *Anderson v. Liberty*

*Lobby Inc.*, 477 U.S. 242, 248 (1986); *accord Saleem v. Corp. Transp. Grp.*, 854 F.3d 131, 148

(2d Cir. 2017).

When the movant properly supports its motion with evidentiary materials, the opposing

party must establish a genuine issue of fact by citing materials in the record.  Fed. R. Civ. P.

56(c)(1)(A).  "A party opposing summary judgment normally does not show the existence of a

genuine issue of fact to be tried merely by making assertions that are based on speculation or are

conclusory."  *S. Katzman Produce Inc. v. Yadid*, 999 F.3d 867, 877 (2d Cir. 2021).  Local Rule

56.1(b) requires the non-moving party to admit or deny each statement of material fact proffered,

with each denial "followed by citation to evidence that would be admissible."  Local Civ. R.

56.1(b)-(d).  When a non-movant fails to support its purported denial of a Statement of Fact with

admissible evidence, that fact "will be deemed to be admitted for the purposes of the motion."

*Id*. R. 56.1(c).  Where "the record does not support the assertions . . . those assertions should be

disregarded."  *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 74 (2d Cir. 2001), *abrogated on*

*other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009); *accord Brooke v. Cnty. of*

---

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks, footnotes and citations are omitted, and all alterations are adopted.

*Rockland*, 17 Civ. 3166, 2021 WL 809320, at *2 n.2 (S.D.N.Y. Mar. 3, 2021), *aff'd*, No. 21-598,

2022 WL 6585350 (2d Cir. Oct. 11, 2022).

Delaware law governs state law issues in both cases.  The parties selected Delaware in

their contractual choice of law provisions, and the briefing assumes Delaware law applies.

*See Trikona Advisers Ltd. v. Chugh*, 846 F.3d 22, 31 (2d Cir. 2017) (where the parties' briefs

assume that a particular state law controls, "such implied consent is . . . sufficient to establish the

applicable choice of law"); *accord Cypress Holdings*, 2024 WL 4265645, at *6 (Delaware law).

## III.   DISCUSSION OF SPORT-BLX'S CLAIMS (22 CIV. 8111)

In 22 Civ. 8111, the parties cross-move for summary judgment on each claim asserted by

Sport-BLX.  Both motions are denied on the claims for federal securities fraud (First Cause of

Action), common law fraud (Second Cause of Action) and breach of fiduciary duty (Third Cause

of Action).  On the tortious interference claim (Fourth Cause of Action), Defendants Cypress and

Salerno are granted summary judgment.

### A.   First Cause of Action -- Federal Securities Fraud (Against Cypress and Salerno)

#### 1.   Timeliness -- Federal Securities Fraud Claim

In the First Cause of Action, Sport-BLX alleges that Salerno committed securities fraud

in violation of Section 10(b) of the Securities Exchange Act and Rule 10b-5 by misrepresenting

in substance that he was the sole owner of Cypress.  The Cypress parties seek summary

judgment on the ground that the claim is untimely.  Their motion is denied because a genuine

dispute of material fact exists as to when a reasonably diligent investor in Sport-BLX's position

would have discovered that the statements were false, including sufficient facts to satisfy the

particularity requirements for pleading fraud under Federal Rule of Civil Procedure 9(b) and the

Private Securities Litigation Reform Act ("PSLRA").

Private securities fraud claims are timely only if filed not later than the earlier of -- (1) two years after the discovery of the facts constituting the violation; or (2) five years after such violation."  28 U.S.C. § 1658(b).  The two-year period begins when a "reasonably diligent plaintiff would have discovered the facts constituting the violation," including particularized facts necessary to plead the claim -- not merely when the plaintiff suspects wrongdoing.  *Merck & Co. v. Reynolds*, 559 U.S. 633, 637 (2010); *City of Pontiac Gen. Emps.' Ret. Sys. v. MBIA, Inc.*, 637 F.3d 169, 175 (2d Cir. 2011); *accord Diesenhouse v. Social Learning & Payments, Inc.*, No. 20 Civ. 7436, 2022 WL 3100562, at *5 (S.D.N.Y. 2022).

Beyond the particularity requirements of Rule 9(b), the heightened pleading requirements of the PSLRA govern federal securities fraud claims brought under Section 10(b) and Rule 10b-5.  *See* 15 U.S.C. § 78u-4(b).  The PSLRA requires a plaintiff to "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading," and to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  *Id*. §§ 78u-4(b)(1), (2)(A).  Thus, a complaint must plead falsity with sufficient detail for each alleged misstatement or omission -- including any duty to disclose or half-truth that rendered the statement misleading -- and must allege particularized facts that, taken together, give rise to a "strong inference" of scienter.  *In re Philip Morris Int'l Inc. Sec. Litig.*, 89 F.4th 408, 417 (2d Cir. 2023).

The First Cause of Action accuses Salerno of making materially false and misleading statements about Cypress's ownership structure -- including, (i) "his February 2019 statement that Cypress was 'my holding company,' (ii) his February 2019 changes to the Side Letter that defined Cypress as 'Salerno' . . . and (iii) his August 2019 statement that his refusal to disclose Cypress's ownership was based on concerns about his 'estate plan'" -- and (iv) "fail[ing] to

disclose Cypress's 18 limited partners." The First Cause of Action alleges, among other injuries, Sport-BLX's "inability to carry out its business plan" because Salerno's refusal to disclose Cypress's ownership precluded FINRA approval.

While Sport-BLX did not assert a cause of action for securities fraud until March 1, 2023, the claim relates back to Sport-BLX's August 3, 2022, state court complaint because the federal claim arises from the same "conduct, transaction, or occurrence set out" in the state court complaint. Fed. R. Civ. P. 15(c)(1)(B). The state court complaint includes allegations that the Side Agreement defined "Cypress" as "Salerno," that Salerno refused to disclose Cypress's ownership and thus prevented FINRA approval and execution of Sport-BLX's initial business plan. Accordingly, the operative filing date is August 3, 2022.

Summary judgment is denied to the Cypress parties on their defense that the federal securities claim is untimely. A material dispute of fact exists about whether Sport-BLX could have discovered the facts necessary to plead a sufficiently particularized claim of fraud before August 3, 2020. This dispute precludes summary judgment. *See Levitt v. Bear Stearns & Co.*, 340 F.3d 94, 104 (2d Cir. 2003) (vacating dismissal of complaint as time-barred where record left factual disputes about whether reasonable inquiry would have uncovered sufficient facts to plead violation of Section 10(b) under Rule 9(b) and the PSLRA), *overruled on other grounds by MBIA*, 637 F.3d at 174 (explaining that, post-*Merck,* the statute of limitations runs only after a "reasonably diligent plaintiff" would have discovered sufficient facts to plead -- not when a "reasonable investor would have begun investigating"); *accord Yu v. Premiere Power LLC*, 14 Civ. 7588, 2018 WL 456244, at *7 (S.D.N.Y. Jan. 17, 2018) (denying summary judgment where record evidence left a triable dispute about whether, under *Merck*, a reasonably diligent investor would have discovered enough particularized facts to plead a Section 10(b) claim).

Even in December 2019, when Hall wrote Salerno: "we always assumed [Cypress] was you but we see now that may not be the case," a reasonable jury could find that Sport-BLX had no way to discover the necessary particulars to plead a claim of fraud. Salerno allegedly concealed Cypress's status as a pooled investment vehicle owned by multiple limited partners, including at least one with a felony conviction. Those ownership particulars are arguably what render Salerno's misrepresentations materially misleading. A jury could find that, even with Sport-BLX's demands and Salerno's refusals to disclose, a "reasonably diligent plaintiff" in Sport-BLX's position could not have discovered the necessary facts until Cypress's court-mandated disclosure of its ownership in February 2023. Summary judgment is denied to the Cypress parties on their statute of limitations defense because a reasonable jury could find facts showing that the federal claim is timely.[2]

### 2. Merits -- Federal Securities Fraud Claim

The parties' cross-motions for summary judgment on the merits of the federal securities fraud claim are denied. Even if Sport-BLX could prevail as a matter of law on the merits of this claim, summary judgment is precluded because the claim could be time barred. Accordingly, summary judgment is denied to Sport-BLX without addressing its merits arguments. Summary judgment is also denied to the Cypress parties because a reasonable jury could find in favor of Sport-BLX on this claim.

---

[2] Although Sport-BLX did not expressly move for summary judgment on Cypress's statute of limitations defense, the underlying factual issue is in dispute because of certain disclosures made by Cypress in the December 13, 2018, SEC filing referenced by the parties in their briefing. A reasonable jury could find, based on this document, that Sport-BLX could have discovered, before August 2020, that the alleged misstatements were false and how they were false, thus establishing that the federal claim is untimely.

To recover damages under Section 10(b) and Rule 10b-5, Sport-BLX must show "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 267 (2014); *accord In re Shanda Games Ltd. Sec. Litig.*, 128 F.4th 26, 42 (2d Cir. 2025), *petition for cert. filed on other grounds*, No. 25-351 (Sept. 22, 2025). On the first element, a statement is materially misleading when "the defendants' representations, taken together and in context, would have misled a reasonable investor." *Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*, 19 F.4th 145, 151 (2d Cir. 2021); *accord In re Arqit Quantum Inc. Sec. Litig.*, 774 F. Supp. 3d 505, 535 (E.D.N.Y. 2025). An omission is material if "a reasonable investor would have considered [it] significant in making investment decisions." *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 161 (2d Cir. 2000); *accord Altayyar v. Etsy, Inc.*, 731 F. App'x 35, 37 (2d Cir. 2018) (summary order). As materiality is an "inherently fact-specific finding," *Basic Inc. v. Levinson*, 485 U.S. 224, 236 (1988), the Second Circuit has cautioned that "[s]ummary judgment may not be granted on the ground that alleged omissions are immaterial unless they are so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance." *Castellano v. Young & Rubicam, Inc.*, 257 F.3d 171, 180 (2d Cir. 2001); *accord S.E.C. v. Grybniak*, No. 20 Civ. 327, 2024 WL 4287222, at *20 (E.D.N.Y. Sept. 24, 2024).

Regarding the other elements, scienter requires "intent to deceive, manipulate, or defraud . . . [or] reckless disregard for the truth," *S.E.C. v. Obus*, 693 F.3d 276, 286 (2d Cir. 2012), and is likewise a "quintessential jury question," *Larkin v. Saber Auto., LLC*, 736 F. Supp. 3d 193, 206 (S.D.N.Y. 2024). Transaction causation (or reliance) "requires allegations that but for the

claimed misrepresentations or omissions, the plaintiff would not have entered into the

detrimental securities transaction."  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 106

(2d Cir. 2007); *accord Eden Alpha CI LLP v. Polished.com Inc.*, 763 F. Supp. 3d 270, 316

(E.D.N.Y. 2025).  The final element, loss causation, by contrast, is the "causal link between the

alleged misconduct and the economic harm ultimately suffered by the plaintiff."  *In re Shanda

Games*, 128 F.4th at 57.

On this record, a reasonable jury could find for Sport-BLX on the federal fraud claim.

First, Salerno described "Cypress" as his "holding company" while omitting that it had multiple

limited partners, including one with a criminal history, and he attributed non-disclosure to

concerns about his "estate plan."  A reasonable jury could find that such representations "would

have misled a reasonable investor," *Altimeo*, 19 F.4th at 151, and that Salerno's omission was

"significant" because, had Sport-BLX known the true facts, it would not have accepted

Cypress's investment.  *Ganino*, 228 F.3d at 161.  Second, a reasonable jury could infer scienter

from Salerno's course of conduct leading Sport-BLX to believe that he "was Cypress" while,

because of his position, he knew of -- and ultimately refused to identify -- Cypress's other

investors.  Third, the parties do not dispute that Salerno's statements were made "in connection

with" the purchase or sale of a security, namely Salerno's purchase of Sport BLX's common

stock.

Turning to the last three elements, the fourth, reliance, is supported by contemporaneous

communications reflecting that Sport-BLX proceeded on the understanding that Cypress was

Salerno (e.g., "[w]e always assumed it was you") and made business decisions on that basis to its

detriment -- including pursuing a FINRA application.  The fifth, economic loss, is supported by

evidence that Sport-BLX incurred costs and changed its business model after proceeding under

11

the understanding that "Cypress" was "Salerno"; the amount of any loss is disputed and is a jury question. And on the sixth, the following chain supports loss causation: the initial misstatement/omission induced Sport-BLX to accept Cypress's investment and to proceed as if Salerno was the sole owner; when disclosure became necessary for FINRA, Salerno explicitly refused to disclose, which precipitated withdrawal of the application and a pivot in business model. A jury could conclude that the harm flowed from the initial misrepresentation (which caused Sport-BLX to make certain business decisions), as well as from later non-disclosure. Because a reasonable juror could find for Sport-BLX on each element, the Cypress parties' motion for summary judgment is denied on the federal securities law claim.

### B.    The Second Cause of Action -- Common-Law Fraud (Against Salerno)

#### 1.    Timeliness -- Common Law Fraud

The Second Cause of Action, which alleges common law fraud, is substantially the same, with the same outcome, as the first cause of action, which alleges federal securities fraud. Both claims are based on the same alleged misstatements and omissions. Salerno seeks summary judgment on the defense that the claim is untimely. Summary judgment is denied because of disputed issues of fact.

The most significant difference between the federal and state fraud claims is that the Delaware statute of limitations is three years, *see* Del. Code Ann. tit. 10, § 8106, and a cause of action accrues under this section at the time of the wrongful act, even if the plaintiff was unaware of the claim. *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312, 319 (Del. 2004). However, the Delaware statute of limitations may be tolled, and the filing period thereby extended, if the plaintiff can show that it "was 'blamelessly ignorant' of both the wrongful act and the resulting harm." *Vichi v. Koninklijke Philips Elecs., N.V.*, 85 A.3d 725, 788 (Del. Ch.

12

2014) ("*Vichi II*") (quoting *In re Tyson Foods, Inc.*, 919 A.2d 563, 585 (Del. Ch. 2007), *overruled on other grounds by In re Match Grp., Inc., Derivative Litig.*, 315 A.3d 446 (Del. 2024)).  The statute begins to run when "objective or observable factors exist to put the plaintiff on constructive notice that a wrong has been committed" or when sufficient facts exist to put a "person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery of such facts."  *Id*. at 789.  The tolling doctrine applicable to "[t]he statute[] of limitations for fraud in . . . Delaware . . . incorporate[s] a variation of the discovery rule, keying the statute of limitations trigger to the date when plaintiffs knew or should have known they have been defrauded."  *Ayers v. Piaker & Lyons, P.C.*, 748 F. App'x 368, 370 (2d Cir. 2018) (summary order).  The Delaware rule is unlike federal securities law, under which the limitations period does not begin to run until a plaintiff is able to discover sufficient facts to plead with the particularity required by the PSLRA.  *Id*.  Instead, the question is "whether sufficient observable or discoverable information existed to put [plaintiff] on notice of the grounds for [its] claim more than three years before [it] filed [its] original complaint."  *Vichi II*, 85 A.3d at 789.  "The principal inquiry is whether it would be inequitable to permit the plaintiff's claim to be enforced."  *Id*. at 788.

As with the federal claim, the common law fraud allegations relate back to Sport-BLX's initial state court complaint filed August 3, 2022.  Sport-BLX first filed its state court complaint more than three years after the February 2019 representations that form the core of its fraud claim.  Those portions of the claim are time barred unless Sport-BLX can show that the statute of limitations should be tolled under the principles outlined above.

Despite the differences between state and federal law, a question of material fact remains under both analyses.  In the case of the common law fraud claim, there is a fact question of when

a reasonably prudent plaintiff in the position of Sport-BLX was on notice that it had been defrauded -- i.e., that Salerno's statements and omissions about the ownership of Cypress were false.  A jury could find the claim timely because it was only after Salerno's repeated stonewalling during Fall 2019 that objective, observable facts existed sufficient to put Sport-BLX on notice.  Or a jury could even find that these exchanges reflected only Salerno's refusal to disclose, not the falsity of the "holding company" statement itself -- a fact that only came to light after court order, demonstrating Sport-BLX's "blameless[] ignoran[ce]."  *See Vichi II*, 85 A.3d at 788.  Summary judgment is denied on Salerno's statute of limitations defense to the common law fraud claim.

### 2.  Merits -- Common Law Fraud

The parties also cross-move for summary judgment on the merits of the common law fraud claim, which is asserted only against Salerno.  As with the federal claim, because the issue of timeliness still could be resolved against Sport-BLX, its argument on the merits of the fraud claim is not addressed.  Summary judgment is denied to Salerno because construing the evidence in favor of Sport-BLX, a reasonable jury could find for Sport-BLX on each element of the claim.

Under Delaware law, fraud may take the form of "an overt misrepresentation," "active concealment of material facts" or "silence in the face of a duty to speak."  *In re Am. Int'l Grp., Inc., Consol. Derivative Litig.*, 965 A.2d 763, 804 (Del. Ch. 2009), *aff'd sub nom. Tchrs.' Ret. Sys. of La. v. PricewaterhouseCoopers LLP*, 11 A.3d 228 (Del. 2011); *accord Brody v. DCiM Sols., LLC*, No. 2018-507, 2025 WL 1802239, at *8 (Del. Ch. June 30, 2025).  Sport-BLX must prove elements similar to the elements of the federal fraud claim to sustain a common law fraud claim: that (1) Salerno falsely represented or omitted facts that he had a duty to disclose; (2) Salerno knew or believed that the representation was false or made the representation with a

14

reckless indifference to the truth; (3) he intended to induce Sport-BLX to act or refrain from acting; (4) Sport-BLX acted in justifiable reliance on the representation and (5) Sport-BLX was injured as a result.  *See Trenwick Am. Litig. Tr. v. Ernst & Young, L.L.P.*, 906 A.2d 168, 207 (Del. Ch. 2006), *aff'd sub nom. Trenwick Am. Litig. Tr. v. Billett*, 931 A.2d 438 (Del. 2007); *Edinburgh Holdings, Inc. v. Educ. Affiliates, Inc.*, 2018 WL 2727542, at *10 (Del. Ch. 2018).

For scienter, Delaware law requires a showing "that [Salerno's] statements were made with contemporaneous knowledge or reckless disregard of the information which rendered misleading the statements actually made."  *Metro Commc'n Corp. BVI v. Advanced Mobilecomm Techs. Inc.*, 854 A.2d 121, 154 (Del. Ch. 2004); *Vichi II*, 85 A.3d at 810.  "Generally, there is no duty to disclose a material fact or opinion, unless the defendant had a duty to speak.  However, where one actively conceals a material fact, such [a] person is liable for damages caused by such conduct."  *Nicolet, Inc. v. Nutt*, 525 A.2d 146, 149 (Del. 1987); *accord Getzler v. River Run Foods (DE), LLC*, No. N23C-2-86, 2024 WL 3273430, at *4 (Del. Super. Ct. July 1, 2024).

For the reasons discussed above in relation to the federal fraud claim, a reasonable jury could find for Sport-BLX on each element.  On this record, Salerno fails to show that no reasonable juror could find for Sport-BLX on the common law fraud claim, and summary judgment is denied as to that claim.

### C.    The Third Cause of Action -- Breach of Fiduciary Duty (Against Cypress and Salerno)

The parties' cross-motions on Sport-BLX's breach-of-fiduciary-duty claim are denied. The parties agree that Cypress's stockholder agreement specifies conditions that would trigger a right "in favor of Salerno being elected to the Board," and that Salerno went on to fill that seat. Sport-BLX alleges that Salerno as a board member, and Cypress as a shareholder with actual control over the FINRA approval process, breached their fiduciary duties of loyalty by

15

withholding information about Cypress's beneficial owners, and, in doing so, advanced Salerno's and Cypress's own interests over Sport-BLX's.  Sport-BLX further alleges that this conduct led Sport-BLX to abandon its broker-dealer application and change its business model.

Salerno -- as a corporate director -- owed a fiduciary duty of loyalty to Sport-BLX.  *See Stone ex rel. AmSouth Bancorp. v. Ritter*, 911 A.2d 362, 370 (Del. 2006).  "[T]he duty of loyalty mandates that the best interest of the corporation and its shareholders takes precedence over any interest possessed by a director, officer or controlling shareholder and not shared by the stockholders generally."  *Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 361 (Del. 1993), *decision modified on reargument*, 636 A.2d 956 (Del. 1994).

Cypress, as a minority shareholder, also owed a fiduciary duty to the extent it "controlled the particular transaction at issue."  *Tornetta v. Musk*, 310 A.3d 430, 500 (Del. Ch. 2024).  A minority shareholder owes fiduciary duties when a plaintiff demonstrates the shareholder has "general control" or "transaction-specific control."  *Id.* at 499-50.  A plaintiff establishes general control by showing that a stockholder "exercised sufficient influence that they, as a practical matter, [were] no differently situated than if they had majority voting control," and transaction-specific control where the stockholder "exercised actual control over the board of directors during the course of a particular transaction."  *Id.* at 500.  Either showing can establish fiduciary status.  *Id.* at 498 ("When a controller displaces or neutralizes a board's power to direct corporate action, then the controller assumes fiduciary obligations."); *see Basho Techs. Holdco B, LLC v. Georgetown Basho Invs., LLC*, No. 11802, 2018 WL 3326693, at *25 (Del. Ch. July 6, 2018) ("If a defendant wields control over a corporation, then the defendant takes on fiduciary duties, even if the defendant is a stockholder who otherwise would not owe duties in that

capacity."), *aff'd sub nom. Davenport v. Basho Techs. Holdco B, LLC*, 221 A.3d 100 (Del. 2019).

Summary judgment is denied on both motions because of disputed issues of fact.  *See Telxon Corp. v. Meyerson*, 802 A.2d 257, 262, 264-65 (Del. 2002) (reversing summary judgment and remanding where disputed facts existed regarding the duty of loyalty); *Coulbourn Farms, LLC v. Est. of Coulbourn*, No. 2023-85, 2024 WL 3291776, at *3 n.4 (Del. Ch. July 3, 2024).

### 1. The Cypress Parties' Motion

Considering the facts in a light most favorable to Sport-BLX, a reasonable jury could find that Salerno and Cypress breached duties of loyalty they owed to Sport-BLX.  "Where directors fail to act in the face of a known duty to act, thereby demonstrating a conscious disregard for their responsibilities, they breach their duty of loyalty by failing to discharge that fiduciary obligation in good faith."  *Stone*, 911 A.2d at 370.

By early August 2019, FINRA requested identification of Sport-BLX's natural-person beneficial owners; Sport-BLX requested Cypress's beneficial-owner information.  At the September board meeting, De Perio told Salerno, "If we do not know who our shareholders are, the application is disqualified?  Is that clear?  Do you understand that?"  Hall told Salerno, "our advisors believe there is no possibility of getting registered with FINRA" without disclosure of Cypress's beneficial owners.  At the November 2019 board meeting, outside FINRA counsel repeated this message, advising the Board that failure to provide beneficial-ownership information would be fatal to Sport-BLX's broker-dealer application, and that the Company needed to know its owners.  Nevertheless, Salerno repeatedly refused to provide the information, citing privacy concerns around his "estate plan" and stating he was "not inclined to make public"

that information.  Salerno later testified that "at the end of the day" he did not believe "[he]

would have been doing the right thing by disclosing their names as partners of Cypress."

A jury could find that the requested ownership information was material to a Board-level

decision about whether to pursue a business strategy that required FINRA approval and that -- as

a director -- Salerno's failure to provide that information constituted a breach of his fiduciary

duty to Sport-BLX, despite any personal preference or obligation to Cypress or its limited

partners.  *See In re Walt Disney Co. Derivative Litig.*, 907 A.2d 693, 751, 754 (Del. Ch. 2005)

("It makes no difference the reason why the director intentionally fails to pursue the best

interests of the corporation."), *aff'd*, 906 A.2d 27 (Del. 2006).

This evidence implicates Salerno not only individually, but also as an agent of Cypress.

"A basic tenet of corporate law, derived from principles of agency law, is that the knowledge and

actions of the corporation's officers and directors, acting within the scope of their authority, are

imputed to the corporation itself."  *Stewart v. Wilmington Tr. SP Servs., Inc.*, 112 A.3d 271,

302-03 (Del. Ch. 2015), *aff'd*, 126 A.3d 1115 (Del. 2015).  A reasonable jury could find, based

on the evidence, that Cypress as a shareholder had "transaction-specific control" over

Sport-BLX's decision to pursue FINRA licensing and therefore had a fiduciary duty to

Sport-BLX with respect to that decision.  *See Tornetta*, 310 A.3d at 500.  A jury could further

find that Cypress breached that fiduciary duty by refusing -- through Salerno -- to provide

Cypress's ownership information.  *See Witmer v. Armistice Cap., LLC*, No. 2022-807, 2025 WL

2350799, at *15 n.193 (Del. Ch. Aug. 14, 2025) (explaining that, while an investor does not

acquire fiduciary status by attribution from its board designee, a designee's knowledge or

conduct may be imputed to the investor depending on the facts).  A reasonable jury could impute

Salerno's knowledge and conduct to Cypress based on evidence that Salerno sat on the Board as

Cypress's representative and said that disclosure "at the end of the day was . . . [his] discretion as a Cypress III manager."

The Cypress parties also argue that any refusal did not cause harm, but a reasonable jury could find otherwise. The record contains warnings from counsel that FINRA approval of the Sport-BLX broker-dealer application would be impossible without disclosure of Cypress's beneficial ownership. The evidence also shows that, after Salerno's repeated refusals to provide the information, Sport-BLX withdrew its application and abandoned its plan to become a fund manager. On these facts, a jury could conclude that Salerno's nondisclosure prevented Sport-BLX from pursuing the FINRA application and ultimately its business plan to the detriment of Sport-BLX.

### 2. Sport-BLX's Motion

Conversely, considering the facts in a light most favorable to Salerno and Cypress, a reasonable jury could credit their challenges to Sport-BLX's claim. First, the Cypress parties argue that while Salerno owed Sport-BLX a fiduciary duty as a director, he had no fiduciary duty to disclose Cypress's investor identities because that disclosure related to Cypress as a shareholder, not to Salerno's role as a director of Sport-BLX. While this distinction may not ultimately be persuasive, whether the request implicated Salerno's role as director and whether his refusal to disclose obstructed corporate interests are questions for the jury. The parties also dispute whether Salerno ultimately offered to provide Cypress's beneficial ownership information to Sport-BLX in December 2019. This assertion and its significance likewise raise jury questions.

A jury could also find that Cypress, as a minority shareholder, did not owe a fiduciary duty to Sport-BLX. A reasonable jury could find that Cypress did not dominate the Board nor

make the ultimate decision to withdraw the FINRA application or abandon Sport-BLX's original business model -- and accordingly conclude that Cypress lacked transaction-specific control. The facts and circumstances that determine whether Cypress had a fiduciary duty are material questions that preclude summary judgment. *See Coulbourn Farms*, 2024 WL 3291776, at *3 n.4 (Del. Ch. July 3, 2024) (denying summary judgment on a breach of fiduciary claim due to material factual disputes regarding the existence of fiduciary obligations).

The Cypress parties also challenge damages. Sport-BLX contends that Salerno and Cypress knowingly prevented Sport-BLX from receiving a broker-dealer license and consequently foreclosed Sport-BLX's main projected revenue stream. The Cypress parties dispute this by pointing to an increase in Sport-BLX's value after adopting a new business plan. These factual disputes also preclude summary judgment on the fiduciary duty claim.

### D.    The Fourth Cause of Action -- Tortious Interference (Against Cypress and Salerno)

The Fourth Cause of Action is dismissed as abandoned. In the Fourth Cause of Action, Sport-BLX asserts tortious interference with prospective economic advantage against Salerno and Cypress. Both sides moved for summary judgment on this claim, but Sport-BLX never defended or even mentioned the claim in its briefing.

"[W]hen a counseled party moves for summary judgment, a partial response [by the non-movant] arguing that summary judgment should be denied as to some claims while not mentioning others may be deemed an abandonment of the unmentioned claims." *Moll v. Telesector Res. Grp., Inc.*, 94 F.4th 218, 257 (2d Cir. 2024); *accord Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 143 (2d Cir. 2016) (finding claims abandoned where brief "failed to support or even address" the claims). Summary judgment is granted to the Cypress parties on the tortious interference claim, the Fourth Cause of Action in 22 Civ. 8111.

20

## IV.    DISCUSSION OF CYPRESS'S CLAIMS (22 CIV. 1243)

In 22 Civ. 1243, Cypress sued Sport-BLX, GlassBridge, Clinton Group, S-BLX Securities and Messrs. Hall, De Perio, Strauss, Ruchalski, Baez and Johnson, bringing direct and derivative claims.  After the Sport-BLX parties' motion to dismiss, the surviving claims in the SAC were: the direct claims against Hall, De Perio and Sport-BLX contained in Counts One (federal securities fraud), Two (breach of the covenant of good faith and fair dealing), Three (fraudulent inducement), Four (negligent misrepresentation) and Five (breach of fiduciary duty); the direct claim against GlassBridge in Count Eight (tortious interference with contract); the derivative claims against S-BLX Securities and Clinton Group in Counts Six (unjust enrichment), Seven (unjust enrichment), Nine (tortious interference with contract), Ten (tortious interference with contract), Eleven (unjust enrichment) and Twelve (aiding and abetting breach of fiduciary duty); and the derivative claim against Baez, Johnson, Strauss and Ruchalski in Count Eighteen (corporate waste).  *See Cypress Holdings*, 2024 WL 4265645, at *10.

The Sport-BLX parties move for summary judgment on all claims.  The motion is granted in part and denied in part, as explained below.  Among the dismissed claims is the federal securities fraud claim, which is the sole claim arising out of federal law and is the basis for the Court's subject matter jurisdiction.  The Court elects to adjudicate the remaining state law claims over which there is supplemental jurisdiction, *see* 28 U.S.C. § 1367(a), given the substantial factual overlap with 22 Civ. 8111, the advanced stage of the litigation and the interests of judicial economy, convenience and fairness.  *See* 28 U.S.C. § 1367(c); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988); *Lulo v. OTG Mgmt., LLC*, 19 Civ. 3776, 2022 WL 409224, at *8 (S.D.N.Y. Feb. 10, 2022) (citing common factual record as a reason for exercising supplemental jurisdiction).

A.      **Cypress's Misrepresentation Claims**

Cypress asserts three claims sounding in misrepresentation -- federal securities fraud (Count One), fraudulent inducement (Count Three) and negligent misrepresentation (Count Four) against Hall, De Perio and Sport-BLX.  All three counts are dismissed.

1.  **Count One -- Federal Securities Fraud (Against Hall, De Perio and Sport-BLX)**

Summary judgment is granted to the Sport-BLX parties on Cypress's federal securities fraud claim in Count One asserted against Hall, De Perio and Sport-BLX.  Cypress alleges that Hall and De Perio, on behalf of Sport-BLX, made material misrepresentations and omissions to induce Cypress to purchase Sport-BLX stock thereby committing securities fraud -- including that (a) investor proceeds would be used for technology development, legal expenses and marketing, (b) Cypress would maintain its board seat as long as it held the requisite shares and (c) Sport-BLX would serve as the manager of a fund that would invest in sports-related assets from which Sport-BLX would receive revenue.  As stated above, a private plaintiff must file a federal securities fraud claim not later than the earlier of: (1) two years after the discovery of the facts constituting the violation; or (2) five years after such violation.  28 U.S.C. § 1658(b).  The two-year period begins when a reasonably diligent plaintiff would have uncovered enough particularized facts to plead their claim.  *See id.*; *Merck & Co.*, 559 U.S. at 653; *City of Pontiac*, 637 F.3d at 175.

Count One is untimely.  Cypress filed its initial state court complaint on January 11, 2022.  Even when viewed in the light most favorable to Cypress, the record shows that a reasonably diligent plaintiff would have discovered the facts constituting the alleged fraudulent inducement prior to January 11, 2020.  First, regarding unauthorized uses of investor funds, undisputed facts show that Cypress was on notice well before January 11, 2020.  By April 2019,

Salerno was already accusing Hall of "self-dealing" regarding rent payments to Clinton Group for the use of office space and equipment. By June 2019, Cypress's counsel had sent a demand letter asserting potential claims regarding its investment. Cypress claims that it learned of critical facts only in 2020 through discovery and GlassBridge's public filings, including the "success fee" that Sport-BLX's affiliates directed to Clinton Group. But the record shows otherwise. The parties do not dispute that within a week of Cypress's investment Salerno began recording board meetings. Salerno (for Cypress) audio-recorded the November 2019 board meeting, at which he expressly cited and discussed GlassBridge's October 7, 2019, Form 8-K. That 8-K specifies under the bold header, "Transaction Fee to Clinton Group," that Clinton Group received "a success fee . . . equal to 15% of the Cash Consideration for its work on the Orix Transaction." Even if Salerno claims he did not learn about the success fee until later, Salerno's self-dealing accusations, Cypress's demand letter indicating awareness of potential claims and Salerno's discussion of the 8-K are sufficient to show that a reasonable investor would have been on notice of the alleged fraud by November 2019.

Regarding Cypress's promised board seat and Sport-BLX's aborted business plan to be a fund manager, Cypress was also on notice prior to January 11, 2020. At the November 2019 board meeting, Hall asked Salerno whether he agreed that "in the absence of the broker/dealer [license necessary for a fund manager], the only way to go forward is to try to monetize [the Company's] technology," to which Salerno responded "Yeah" and "although this sounds okay, it's nothing close to the investment we made into SportBLX and, you know, creating an exchange and a broker/dealer platform." On December 12, Hall wrote to Salerno, "as you know we withdrew our application and changed our business plan to a technology model as we discussed in many meetings." And on January 7, 2020, Sport-BLX sent Cypress's counsel the

Inspector of Election's report reflecting the results of the shareholder vote eliminating Cypress's board seat. Taken together, these undisputed facts show that, no later than January 7, 2020, a reasonably diligent plaintiff would have known sufficient particularized facts to plead the alleged securities fraud. *See Merck & Co.*, 559 U.S. at 653; *City of Pontiac*, 637 F.3d at 175. Cypress's state court complaint, filed on January 11, 2022, was therefore outside the two-year limitations period. Count One is dismissed.

### 2. Count Three -- Fraudulent Inducement (Against Hall, De Perio and Sport-BLX)

The Sport-BLX parties' motion for summary judgment is granted on Count Three. Count Three is the state law counterpart to the federal fraud claim in Count One. Count Three alleges that Hall, De Perio and Sport-BLX fraudulently induced Cypress to invest in Sport-BLX making the same three core misrepresentations as alleged in Count One: (1) limitations on the use of investor funds; (2) promises about Cypress's board seat; and (3) representations that Sport-BLX would be a fund manager for a sports-asset fund and receive fees.

"Under Delaware law, there is no difference between a claim for fraudulent inducement and a claim for fraud." *Trifecta Multimedia Holdings Inc. v. WCG Clinical Servs. LLC*, 318 A.3d 450, 463 n.34 (Del. Ch. 2024). The elements of fraud are:

> (1) a false representation, usually one of fact, made by the defendant; (2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth; (3) an intent to induce the plaintiff to act or to refrain from acting; (4) the plaintiff's action or inaction taken in justifiable reliance upon the presentation; and (5) damage to the plaintiff as a result of such reliance.

*Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund, II, L.P.*, 624 A.2d 1199, 1208 n.17 (Del. 1993); *accord S'holder Representative Servs. LLC v. Albertsons Companies, Inc.*, No. 2020-710, 2021 WL 2311455, at *10 (Del. Ch. June 7, 2021). The fraudulent inducement claim

here fails on two elements -- justifiable reliance and defendants' knowledge that the forward-looking promises were false.

The integration and anti-reliance clauses in the parties' contracts defeat a showing of justifiable reliance. "Delaware law enforces clauses that identify the specific information on which a party has relied and which foreclose reliance on other information." *Prairie Cap. III, L.P. v. Double E Holding Corp.*, 132 A.3d 35, 50 (Del. Ch. 2015) (citing *RAA Mgmt., LLC v. Savage Sports Holdings, Inc.*, 45 A.3d 107, 118-19 (Del. 2012)). "[F]or a contract to bar a fraud in the inducement claim, the contract must contain language that, when read together, can be said to add up to a clear anti-reliance clause by which the plaintiff has contractually promised that it did not rely upon statements outside the contract's four corners in deciding to sign the contract." *Kronenberg v. Katz*, 872 A.2d 568, 593 (Del. Ch. 2004) (explaining that while "the presence of a standard integration clause alone" will "not suffice to bar fraud claims," it may be sufficient when "accompanied by other contractual provisions demonstrating with clarity" that the plaintiff disclaimed reliance on outside representations). *Prairie Capital* explains that where an agreement "affirmatively" provides that the buyer "only relied on the representations and warranties in the SPA," such an "Exclusive Representations" clause and an integration clause "add up to a clear anti-reliance clause." *Prairie Cap. III*, 132 A.3d at 51; *accord Albertsons*, 2021 WL 2311455, at *2 (dismissing fraudulent-inducement theory "for lack of justifiable reliance" where "the clear and unambiguous language of the [contract] conflicts with each of the purported oral misrepresentations").

Those principles control here. The 2019 Stock Purchase Agreements ("SPAs") contain (1) an integration clause that states the SPAs and associated documents "represent[] the entire agreement . . . and supersede[] and replace[] any and all prior written or oral agreements

regarding the subject matter of this Agreement including . . . any representations made during any . . . negotiations," and (2) an anti-reliance clause that the purchaser "is relying solely on his or her own counsel and advisors and not on any statements or representations of the Company or its agents for legal or other advice with respect to this investment or the transactions contemplated by this Agreement." Under *Prairie Capital*, these provisions "add up to a clear anti-reliance clause," barring reliance on pre-SPA extra-contractual statements. *Prairie Cap. III*, 132 A.3d at 51; *accord Albertsons*, 2021 WL 2311455, at *12.

A second basis for granting summary judgment is that the evidence fails to show that Sport-BLX, Hall, and De Perio made the forward-looking promises with "knowledge or belief that the representation[s] w[ere] false, or reckless indifference to the truth." *Vichi II*, 85 A.3d at 773. Delaware recognizes that a promise can constitute fraud if the speaker lacked a present intent to perform. *See Trifecta*, 318 A.3d at 464. But on this record, Cypress does not identify evidence that, when Defendants made the alleged misrepresentations about the future use of proceeds, board seat or Sport-BLX's anticipated role as fund manager, Defendants knew the statements were false, or that Defendants lacked a present intent to perform.[3] Absent such evidence, the challenged statements are, at most, extra-contractual projections and business plans that fall within the anti-reliance provisions discussed above, or promises that sound in contract, not fraud. *See Albertsons*, 2021 WL 2311455, at *13 ("[Plaintiff] . . . cannot claim fraud based on future promises not memorialized in the Merger Agreement.").

---

[3] Regarding the use of investor proceeds, contemporaneous pro formas showing rent payments are insufficient to create an issue of fact about Hall, De Perio, and Sport-BLX's intent. These written projections conflict with the negotiated integration/reliance framework, as explained above. Furthermore, even if these pro formas show Defendants' present intent about the use of investor proceeds, that use was disclosed to Cypress and undercuts any misstatement that was made about the use of investor proceeds for rent.

### 3.  Count Four -- Negligent Misrepresentation (Against Hall, De Perio and Sport-BLX)

The Sport-BLX parties are granted summary judgment on the negligent misrepresentation claim in Count Four against Hall, De Perio and Sport-BLX.  This claim is based on the same representations at issue in the fraudulent misrepresentation claims but alleges negligent rather than intentional wrongdoing.  "Unlike traditional fraud claims, negligent misrepresentation, or equitable fraud claims do not require a knowing or intentional state of mind."  *Grunstein v. Silva*, No. 3932, 2009 WL 4698541, at *14 (Del. Ch. Dec. 8, 2009); *accord Fortis Advisors LLC v. Johnson & Johnson*, No. 2020-881, 2021 WL 5893997, at *14 (Del. Ch. Dec. 13, 2021).

While Cypress argues that Hall and De Perio "induced . . . Cypress to make its investment" via false representations about future conduct and that Hall and De Perio "failed to exercise reasonable care in communicating this false information," such a showing is insufficient under Delaware law.  Negligence "cannot lie where the underlying representations take the form of promises because . . . the promise to honor an agreement is only a misrepresentation if the promisor knows at the time of the promise that he will ultimately breach; such a misrepresentation cannot occur unknowingly or negligently."  *Grunstein*, 2009 WL 4698541, at *14.  As explained above in the discussion of Count Three, even viewing the record in a light most favorable to Cypress, Cypress proffers no evidence that Hall and De Perio "kn[ew] at the time of the promise that [they would] ultimately breach."  *Id*.  The Sport-BLX parties' motion is granted as to Count Four.

### B.    Remaining Direct Claims Against Hall, De Perio and Sport-BLX

The Sport-BLX parties move for summary judgment on the remaining two direct claims against Hall, De Perio and Sport-BLX.  The motion to dismiss opinion narrowed both claims, which now pertain only to the loss of Cypress's board seat.  *See Cypress Holdings*, 2024 WL

4265645, at *3, *10.  Specifically, the February 28, 2019, Side Agreement required Hall and De Perio "to vote, or cause to be voted, all shares of the Company's capital stock owned by [them], or over which [they had] voting control, in favor of Salerno being elected to the Board," as Cypress held at least 2.5% of Sport-BLX's outstanding stock.  At the December 23, 2019, shareholder meeting, Hall and De Perio cast all personally owned shares in favor of Salerno, but other stockholders voted against him, resulting in Cypress losing its board seat.  Cypress contends that Hall and De Perio transferred their personal shares to an affiliate under their control for the purpose of undermining the Side Agreement.  The Sport-BLX parties' motion is denied as to Count Two and granted as to Count Five.

### 1. Count Two -- Breach of the Covenant of Good Faith and Fair Dealing (Against Hall, De Perio and Sport-BLX)

Count Two survives summary judgment.  This claim asserts breach of the implied covenant of good faith and fair dealing, which "requires a party in a contractual relationship to refrain from arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from receiving the fruits of the bargain."  *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 442 (Del. 2005); *accord Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 124 (2d Cir. 2022) (Delaware law).  To establish a claim, Cypress must identify (1) a specific implied contractual obligation, (2) a breach of that obligation and (3) resulting damages.  *See Blaustein v. Lord Baltimore Cap. Corp.*, No. 6685, 2012 WL 2126111, at *5 (Del. Ch. May 31, 2012).  The implied covenant "is a limited and extraordinary legal remedy and not an equitable remedy for rebalancing economic interests that could have been anticipated."  *Glaxo Grp. Ltd. v. DRIT LP*, 248 A.3d 911, 920 (Del. 2021).  While plaintiff "cannot base a claim . . . on conduct authorized by the agreement," *Nemec v. Shrader*, 991 A.2d 1120, 1125-26 (Del. 2010); *Boston Consulting Grp., Inc. v. GameStop Corp.*, No. 22 Civ. 363, 2023 WL 2683629, at *13 (D. Del. Mar. 29,

2023) (Delaware law), the covenant applies when "the express terms of the agreement can be reasonably read to imply certain other conditions, or leave a gap, that would prescribe certain conduct, because it is necessary to vindicate the apparent intentions and reasonable expectations of the parties," *Dieckman v. Regency GP LP*, 155 A.3d 358, 367 (Del. 2017); *accord Miller*, 43 F.4th at 124.

Here, considering the evidence in a light most favorable to Cypress, a reasonable jury could find that Hall and De Perio used the transfer of their stock to an affiliate to evade the Side Agreement and eliminate Cypress's board seat -- a "gap" that goes to the heart of the bargained-for exchange. In July 2019, Hall told Salerno, "we can't put a high-class board together with your idiotic behavior. So we will have to work around you." About ten days before the December 2019 vote, Hall and De Perio transferred personal shares to an entity they allegedly controlled, which proceeded to vote against Salerno. A contemporaneous spreadsheet prepared by De Perio reflects what Cypress alleges are calculations of the shares needed to vote Salerno off the board. On this record, a jury could find that the Hall, De Perio and Sport-BLX used a nominally permitted sale of shares to "work around" the Side Agreement and eliminate Cypress's board seat -- conduct that "frustrates the overarching purpose of the contract by taking advantage of [a] position to control implementation of the agreement's terms." *Dunlap*, 878 A.2d at 442; *Miller*, 43 F.4th at 124. Sport-BLX may argue that the SPAs' tag-along clauses contemplated control-shifting sales. But a reasonable jury could find that such provisions were meant to address third-party sales, not transfers to related entities -- another factual issue to be resolved.

The Sport-BLX parties also contend that damages are speculative because the board seat carried no fixed compensation. That argument does not warrant summary judgment. Cypress

identifies loss of the bargained-for board representation and consequential injury to its

investment.  Any difficulty quantifying that loss goes to the measure of damages, not liability; at

a minimum, nominal damages could be awarded for any breach.  *See Cygnus Opportunity Fund,*

*LLC v. Washington Prime Grp., LLC*, 302 A.3d 430, 454 (Del. Ch. 2023); *In re P3 Health Grp.*

*Hldgs., LLC*, No. 2021-518, 2022 WL 16548567, at *9 n.2 (Del. Ch. Oct. 31, 2022) (collecting

authorities).  The Sport-BLX parties' motion is denied as to Count Two.

### 2.  Count Five -- Breach of Fiduciary Duty (Against Hall and De Perio)

Summary judgment is granted to the Sport-BLX parties on the breach of fiduciary duty

claim in Count Five.  "It is a well-settled principle that where a dispute arises from obligations

that are expressly addressed by contract, that dispute will be treated as a breach of contract

claim."  *Nemec*, 991 A.2d at 1129; *Stewart v. BF Bolthouse Holdco, LLC*, No. 8119, 2013 WL

5210220, at *12 (Del. Ch. Aug. 30, 2013) ("Delaware law recognizes the primacy of contract

law over fiduciary law").  Fiduciary duty claims based on "the same facts that underlie the

contract obligations" are "foreclosed as superfluous."  *Nemec*, 991 A.2d at 1129.

Here, the fiduciary duty claim against Hall and De Perio arises from "the same facts that

underlie the contract obligations" in Count Two.  As the Sport-BLX parties argued, "Cypress's

breach of fiduciary duty claim is foreclosed because Hall and De Perio's contractual obligation

to vote in favor of seating Salerno on the board is a contractual obligation negotiated and

memorialized in the Side Agreement, and that contractual obligation governs all aspects of

Cypress's alleged right to a board seat."  Not only does this principle warrant summary judgment

to Hall and De Perio, *id.*, but Cypress's opposition neither addresses the argument nor defends

Count Five, providing an independent ground for summary judgment.  *See Moll*, 94 F.4th at 257;

*Kovaco*, 834 F.3d at 143.  Summary judgment is granted to Hall and De Perio on Count Five.

### C.     Remaining Derivative Claims

The Sport-BLX parties also move for summary judgment on Counts Six, Seven, Nine, Ten, Eleven and Twelve against S-BLX Securities and Clinton Group; and Count Eighteen against Johnson, Baez, Strauss and Ruchalski -- all brought derivatively on behalf of Sport-BLX. While Count Eight against GlassBridge is a direct claim, it is addressed here as well.  The Sport-BLX parties' motion for summary judgment is granted as to Counts Six, Seven, Nine, Ten, Eleven and Eighteen and denied as to Counts Eight and Twelve.

### 1.   Counts Six, Seven and Eleven -- Unjust Enrichment Claims

Summary judgment is granted to the Sport-BLX parties on Counts Six, Seven and Eleven.  As narrowed by the motion to dismiss opinion, Counts Six, Seven and Eleven all allege derivative claims for unjust enrichment.  *See Cypress Holdings*, 2024 WL 4265645, at *8, *10. Counts Six and Seven against S-BLX Securities allege the siphoning of Sport-BLX's assets through the sale by Sport-BLX of its trading platform at a below-market price to S-BLX Securities.  Count Eleven, against Clinton Group, challenges alleged siphoning through (i) "excessive" rent Sport-BLX paid to Clinton Group for office space and (ii) "success fees" paid to Clinton Group.

To prevail on its unjust enrichment claims, Cypress must prove "(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law."  *Nemec*, 991 A.2d at 1130 ("Unjust enrichment is the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience.").  Even viewing the record in favor of Cypress, no reasonable jury could find for

Cypress on its unjust enrichment claims.  Summary judgment is granted to the Sport-BLX parties named in Counts Six, Seven and Eleven.

> **i.    Counts Six and Seven -- Unjust Enrichment Against S-BLX Securities**

Summary judgment is granted to S-BLX Securities on Counts Six and Count Seven. Sport-BLX developed a software platform to support trading in sports-related assets.  In 2021, S-BLX Securities purchased the platform for $225,000 cash.  Count Six alleges that "S-BLX Securities was unjustly enriched . . . when [it] purchased Sport-BLX's proprietary trading platform from Sport-BLX -- in a transaction facilitated and approved by Hall and De Perio -- at far below fair market value."

Count Six fails because Cypress has not proffered evidence from which a reasonable jury could find that S-BLX Securities was enriched or that Sport-BLX was impoverished without justification by the sale of the platform.  Delaware's standard does not require actual financial loss and permits recovery where "the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience." *Fleer Corp. v. Topps Chewing Gum, Inc.*, 539 A.2d 1060, 1062 (Del. 1988); *accord Garfield ex rel. ODP Corp. v. Allen*, 277 A.3d 296, 345 (Del. Ch. 2022) (stating in dicta "a plaintiff must plead that the defendant received a benefit, that the defendant's receipt of the benefit was unjustified, and that there is some connection between the benefit unjustly received and an invasion of the plaintiff's legally protected rights").  Even so, Cypress has pointed to no evidence showing that the purchase price was unjust or unfair.  In exchange for taking sole ownership rights to the platform, S-BLX Securities paid Sport-BLX $225,000 in

December 2021.[4]  At the point of sale, S-BLX Securities had already taken possession of the platform due to Sport-BLX's default on the parties' subscription agreement.  Defendants proffered unrefuted expert testimony that $225,000 "was a fair price given the software code quality and the wide availability of high quality platforms that were available for free."  Cypress admits it offers no expert testimony to the contrary and identifies no admissible valuation evidence establishing a higher fair market value.

Instead, Cypress relies on (1) the platform's development costs and (2) the pre-sale subscription-fees paid by S-BLX Securities, on their face, to establish fair market value -- but these comparisons do not create a triable issue of fact.  First, Cypress argues that Sport-BLX "paid over $2 million to develop" the platform.  However, its memorandum of law fails to cite any basis for this figure[5] or anything linking sunk development costs to the platform's fair market value at the point of sale.  *Cf. Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp., Inc.*, 68 F.4th 792, 812 (2d Cir. 2023) (rejecting an "avoided development cost" unjust enrichment award for trademark infringement and reasoning that development cost does not reflect actual value), *cert. denied*, 144 S. Ct. 352 (2023).  Second, Cypress relies on a June 2020 subscription agreement where S-BLX Securities agreed to pay Sport-BLX $1.2 million and $1.65 million for the first and second years of use, respectively.  But absent any evidence linking the subscription fees to fair market value in December 2021, the fee figure cannot sustain Cypress's burden.  The parties entered into the subscription agreement a year and a half prior to the sale, and the agreement included services beyond pure platform access -- including "design,

---

[4] The parties dispute whether the purchase price also included cancellation of debt, which would increase the total consideration to $1,599,999.
[5] Sport-BLX's June 30, 2019, Income Statement reports only $1,370,523.13 in "Platform Development Expenses."

development, customization, implementation, professional or other project services." Without competent evidence linking the development costs and subscription fees to the fair value of the platform in December 2021, the figures alone offer no evidentiary basis from which a reasonable jury could find for Cypress -- especially in light of Sport-BLX's unrebutted expert opinion to the contrary.

Count Seven is also dismissed. Although Count Seven is pleaded as a separate "continued unjust enrichment" claim, the SAC does not identify what post-sale conduct by S-BLX Securities constitutes the continued enrichment, and Cypress's opposition does not develop any distinct theory. Instead, Cypress (i) reprises the platform sale arguments (Count Six); (ii) points to conduct by Hall and De Perio (dismissed on the motion to dismiss as to this claim) and (iii) invokes GlassBridge/ORIX (same). *See Cypress Holdings*, 2024 WL 4265645, at *10. As Cypress offers no argument or evidence addressing Count Seven related to S-BLX Securities, the claim is dismissed. *See Moll*, 94 F.4th at 257; *Kovaco*, 834 F.3d at 143.

### ii.    Count Eleven -- Unjust Enrichment Against Clinton Group

Summary judgment is likewise granted on Count Eleven asserted against Clinton Group. Cypress's claim rests on two theories: (1) a "success fee" paid by GlassBridge to Clinton Group and (2) "excessive rent" that Sport-BLX paid while housed at Clinton Group's offices. "To prove [the third] element of unjust enrichment, a plaintiff must show that there is some *direct* relationship between a defendant's enrichment and a plaintiff's impoverishment." *Vichi v. Koninklijke Philips Elecs. N.V.*, 62 A.3d 26, 59-60 (Del. Ch. 2012) ("*Vichi I*"). Even assuming the other elements and considering the evidence in a light most favorable to Cypress, both theories lack the required "relation" between any alleged enrichment to Clinton Group and an impoverishment of Sport-BLX.

34

The "success-fee" theory fails as Cypress points to no evidence that Sport-BLX paid or was "impoverished" in some other way by the success fee. While Cypress cites a "$3,983,000 success fee to . . . Clinton Group," the Sport-BLX parties' reply explains that this figure encompasses two separate success fees: one for work on the PBGC transaction and another for work on the ORIX transaction. The evidence shows that GlassBridge, not Sport-BLX, paid both fees. Cypress admits the PBGC fee was tied to GlassBridge's ERISA liabilities and had "no relation to SportBLX, Inc.'s business plan or operations." While Cypress disputes that Sport-BLX likewise was uninvolved in the ORIX deal, Cypress cites no supporting evidence. Under Local Rule 56.1, this amounts to an admission. *See* Local Civ. R. 56.1(c); *Brooke*, 2021 WL 809320, at *2, n.2 ("[T]he Court deems [movant's] statements of fact admitted unless controverted by [non-movant] *and* supported by evidence.").

Cypress's remaining points do not alter the "success-fee" analysis. That GlassBridge moved a "partnership interest in The Sports & Entertainment Fund, L.P., that was part of an entity sold to GEH Sport LLC" for "$1.00" with Sport-BLX shares pledged as collateral does not show that the success fees were owed to, paid by or taken from Sport-BLX. To the extent Cypress argues that Sport-BLX was entitled to the success fee, as "[i]t was represented to Salerno that transactions such as the Orix transaction would lead to success fees for Sport-BLX," the cited evidence does not support that contention, nor is the alleged representation to Salerno sufficient to show a "*direct* relationship" between Clinton Group's "enrichment" and Sport-BLX's "impoverishment." *Vichi I*, 62 A.3d at 59-60.

The "excessive rent" theory fails for similar reasons. The due-diligence materials that Salerno reviewed disclosed a $500,000 annual rent payment by Sport-BLX. Because Cypress fails to proffer evidence that the success fees and rent unjustly enriched Clinton Group in a way

that corresponds to the impoverishment of Sport-BLX, summary judgment is granted to Clinton Group on Count Eleven.

### 2. Counts Eight, Nine and Ten -- Tortious Interference with Contract (Against GlassBridge, Clinton Group and S-BLX Securities)

Summary judgment is granted to the Sport-BLX parties on Counts Nine and Ten but Count Eight survives. Although Count Eight against GlassBridge was recharacterized as a direct claim in the motion to dismiss opinion, the three claims are addressed together. *See Cypress Holdings*, 2024 WL 4265645, at *10. The direct or derivative posture does not alter the elements -- only the beneficiary of any recovery. *Id*. at *2.

"Under Delaware law, the elements of a claim for tortious interference with a contract are: (1) a contract, (2) about which defendant knew, and (3) an intentional act that is a significant factor in causing the breach of such contract, (4) without justification, (5) which causes injury." *Bhole, Inc. v. Shore Invs., Inc.*, 67 A.3d 444, 453 (Del. 2013); *accord Schiff v. ZM Equity Partners, LLC*, No. 19 Civ. 4735, 2020 WL 5077712, at *11 (S.D.N.Y. Aug. 27, 2020) (Delaware law).

### i. Count Eight -- Tortious Interference Against GlassBridge

Summary judgment is denied to GlassBridge on Count Eight, which alleges that GlassBridge tortiously interfered with Cypress's board seat by orchestrating share purchases and advancing its own director slate. This holding is consistent with the ruling on Count Two -- that a reasonable jury could find a breach of the covenant of good faith based on Hall and De Perio's use of stock transfers to GlassBridge to evade the Side Agreement and eliminate Cypress's board seat. While the Sport-BLX parties dispute causation, GlassBridge's stock purchases from Hall and De Perio in December 2019, GlassBridge's subsequent solicitation of votes for its own slate and the ensuing vote removing Salerno could lead a reasonable jury to find that GlassBridge's

conduct was a "significant factor" in the breach of the board-seat commitment.  *See Bhole*, 67

A.3d at 453.

The same is true for justification.  Delaware courts consider the following factors in

determining if interference with another's contract "is improper or without justification":

> (a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the
> other with which the actor's conduct interferes, (d) the interests sought to be
> advanced by the actor, (e) the social interests in protecting the freedom of action
> of the actor and the contractual interests of the other, (f) the proximity or
> remoteness of the actor's conduct to the interference and (g) the relations between
> the parties.

*WaveDivision Holdings, LLC v. Highland Cap. Mgmt., L.P.*, 49 A.3d 1168, 1174 (Del. 2012).

The Sport-BLX parties assert that GlassBridge's conduct was justified because it acted to protect

its own economic interests and financial stake in the company.  However, as Cypress argues, a

reasonable jury could find, based on the timing, solicitation of votes and the election's result, that

GlassBridge's "economic interest" was pretextual and that its actions were aimed at defeating

Cypress's bargained-for board seat.  Such disputes of fact preclude summary judgment on Count

Eight.

### ii.    Count Nine -- Tortious Interference Against Clinton Group

Summary judgment is granted to the Clinton Group on Count Nine, which alleges that

Clinton Group tortiously interfered with the contract between Sport-BLX and Cypress by

(i) diverting the success fees meant to go to Sport-BLX (including an ORIX "success fee") and

(ii) extracting exorbitant rent.

The claim fails because the record contains no evidence of an underlying contractual duty

that Sport-BLX (or any other party) breached regarding success fees or rent.  Tortious

interference requires "an actual breach of contract."  *Beard Rsch., Inc. v. Kates*, 8 A.3d 573, 607

(Del. Ch. 2010) (dismissing tortious interference claim for failure to prove "essential element" of

breach), *aff'd sub nom. ASDI, Inc. v. Beard Rsch., Inc.*, 11 A.3d 749 (Del. 2010).  While Cypress alleges "[t]he Founders had represented to Cypress that . . . transaction[s like ORIX] and corresponding success, management and advisory fees [would be] steered to Sport-BLX," Cypress fails to identify a contractual provision or other agreement stating that.  The rent theory fails for the same reason; Cypress identifies no contract term or agreement that required different rent or prohibited the sublease structure.  As the record contains no evidence of breach under either theory, Count Nine is dismissed.

### iii.    Count Ten -- Tortious Interference Against S-BLX Securities

Summary judgment is granted to S-BLX Securities on Count Ten.  Count Ten alleges that S-BLX Securities tortiously interfered with Sport-BLX's contracts and business plan by acquiring the trading platform for less than fair market value.  Cypress has not shown that Sport-BLX breached any contractual obligation to Cypress by selling the platform to S-BLX Securities but argues only that "[t]he transfer was against the fundamental principles of justice."  Count Ten is dismissed.

### 3.    Count Twelve -- Aiding and Abetting Breach of Fiduciary Duty (Against S-BLX Securities and Clinton Group)

Unlike the other derivative claims, Count Twelve survives summary judgment.  Count Twelve alleges that S-BLX Securities and Clinton Group aided and abetted Hall and De Perio's breach of fiduciary duty to Cypress.  The claim survives because the Sport-BLX parties moved for summary judgment on the claim but offered no substantive argument in support.  They bear the burden of demonstrating "that there is no genuine dispute as to any material fact."  Fed. R. Civ. P. 56(a); *Vista Food Exch., Inc. v. Comercial De Alimentos Sanchez S De R L De C.V.*, 147 F.4th 73, 85 (2d Cir. 2025).  The Sport-BLX parties' motion on Count Twelve is denied.

### 4. Count Eighteen -- Corporate Waste (Against Ruchalski, Strauss, Baez and Johnson, Derivatively on Behalf of Sport-BLX)

Summary judgment is granted to Messrs. Ruchalski, Strauss, Baez and Johnson on the corporate-waste claim. Cypress alleges that as Sport-BLX directors, these Defendants caused Sport-BLX to sell its software platform to an affiliated entity for "far below the development costs" and "without justification." Apart from those assertions, Cypress does not develop a separate corporate waste analysis in its opposition. Under Delaware law, corporate waste is a "rare" remedy that requires an exchange of assets so one-sided that "no business person of ordinary, sound judgment" would conclude that the corporation received "adequate consideration." *In re Walt Disney Co.*, 906 A.2d at 74 ("Th[e] onerous standard for waste is a corollary of the proposition that where business judgment presumptions are applicable, the board's decision will be upheld unless it cannot be attributed to any rational business purpose."); *F5 Cap. v. Pappas*, 856 F.3d 61, 88 n.19 (2d Cir. 2017) (Delaware law).

Here, the record does not permit a reasonable juror to find that "no business person of ordinary, sound judgment" could conclude "adequate consideration." *In re Walt Disney Co.*, 906 A.2d at 74. Sport-BLX received $225,000 in cash for its software platform. As discussed, Cypress has not offered evidence to refute $225,000 as the platform's fair market value. Citations to the platform's development costs and subscription fees alone do not prove inadequate consideration. *See Brehm v. Eisner*, 746 A.2d 244, 263 (Del. 2000) ("[I]f there is *any substantial* consideration received by the corporation, and if there is a *good faith judgment* that in the circumstances the transaction is worthwhile, there should be no finding of waste, even if the fact finder would conclude ex post that the transaction was unreasonably risky."); *C.D.S., Inc. v. Zetler*, 298 F. Supp. 3d 727, 769 (S.D.N.Y. 2018) (Delaware law). Such a failure of proof is fatal to Cypress's claim. *See McCrae Assocs., LLC v. Universal Cap. Mgmt., Inc.*, 746 F. Supp.

2d 389, 401 (D. Conn. 2010) (Delaware law) ("[W]hile [plaintiff] characterizes the expenditures as being reckless and for services of dubious value, it fails to produce evidence that could support a conclusion that corporate assets have been wasted.").  Count Eighteen is dismissed.

## V.  CONCLUSION

For the foregoing reasons, the parties' motions for summary judgment are **GRANTED** in part and **DENIED** in part.

In 22 Civ. 8111, the First Cause of Action for federal securities fraud against Cypress and Salerno, the Second Cause of Action for common law fraud against Salerno and the Third Cause of Action for breach of fiduciary duty against Cypress and Salerno survive summary judgment. The Fourth Cause of Action for tortious interference against Cypress and Salerno is dismissed.

In 22 Civ. 1243, the surviving direct claims are Count Two for breach of the covenant of good faith and fair dealing against Hall, De Perio and Sport-BLX.  The surviving derivative claims are Count Eight for tortious interference against GlassBridge and Count Twelve for aiding and abetting breach of fiduciary duty against S-BLX Securities and Clinton Group.  All other claims are dismissed.  The Sport-BLX parties' pre-motion letter for sanctions will be addressed separately.

By **October 14, 2025,** the parties shall file a joint letter on whether the cases should be consolidated for trial.  If the parties cannot agree, the letter shall state each side's position.

In 22 Civ. 1243, the Clerk of Court is respectfully directed to terminate Defendants Baez, Johnson, Strauss and Ruchalski, and to close the motions at Dkt. Nos. 206 and 215.  In 22 Civ. 8111 the Clerk of Court is respectfully directed to close the motion at Dkt. No. 96.

Dated: September 30, 2025
New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**

40